UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of the United States of America for Authorization to Intercept Wire Communications, USAO Reference No. 2014R01194. | **Order for Expedited Provision of Subscriber and Service Information**<br><br>**Sealed** |

**TO:  Any Provider of Electronic Communications Service Under 18 U.S.C. § 2510(15), and its Agents and Employees**

**1. Issuance of Order of Interception.** This Court has on this date granted an application by the United States for an Order of Interception pursuant to the provisions of Chapter 119 of Title 18, United States Code ("Title III") authorizing Special Agents of the Federal Bureau of Investigation ("Investigating Agency"), and other investigative and law enforcement officers, assisted, if necessary, by authorized translators, to intercept and record wire communications, including messages to voicemail, as well as background conversations occurring over and in the vicinity of the Target Cellphone designated in the Order of Interception for the period of the interception authorized by that order.

**2. Need for Expedition.** To effectuate the purposes of the Order of Interception it is necessary for the Investigating Agency to expeditiously obtain subscriber, toll, and other service information relating to telephones and other devices in communication with the Target Cellphone during the period of interception.

Now, therefore, pursuant to 18 U.S.C. § 2703, it is hereby ORDERED:

**3. Expedited Provision of Information.** Any provider of electronic communication services upon whom this Order is served by the Investigating Agency is directed to provide to the Investigating Agency, within twenty-four hours of request by the Investigating Agency, all published and non-published subscriber information, including telephone or instrument number or other subscriber number or identity and any temporarily assigned network address; means and source of payment for such service (including any credit card or bank account number); and local and long distance call and call duration records for up to a 30-day period immediately preceding the Investigating Agency's request, for any telephone or communications device that Investigating Agency represents to the service provider is in pertinent communication with the Target Cellphone or is otherwise related to the interception authorized by this Court.

**4. Duration of Order.** This Order shall be in effect for a 30-day period to be measured from the earlier of the date on which investigative or law enforcement officers begin to conduct interception under this Court's Order, or ten days from the date of this Court's Order.

**5. Non-Disclosure.** Pursuant to 18 U.S.C. §2705(b), because earlier notice may seriously jeopardize the investigation, endanger the life or physical safety of investigating agents or other persons, lead to flight of suspects, loss of evidence, and/or intimidation of witnesses, no service provider upon whom this order is served shall provide notice to any subscriber or customer as to whom information is provided (i) for six months following the date of this order, (ii) and

thereafter, without ten (10) days prior notice to the Investigating Agency in case a further delay in providing notice is warranted.

Dated: Brooklyn, New York

December 16th, 2015

THE HONORABLE MARGO K. BRODIE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| In the Matter of the Application of the United States of America for Authorization to Intercept Wire Communications Occurring over the Cellular Telephone Initially Identified as 973-901-4101, USAO Reference No. 2014R01194. | **Order to Service Provider**<br><br>**Sealed**<br><br>**15 Misc. 2468** |
|---|---|

## Contents

1. Target Cellphone ................................................................................................. 2

2. Successor Target Cellphones .............................................................................. 2

3. Successor Service Provider ................................................................................. 2

4. Duration of Order ............................................................................................... 2

5. Technical Assistance .......................................................................................... 2

6. Pen Register Trap and Trace Order .................................................................... 3

7. Pen Register with Cell Site Information ............................................................. 3

8. Additional Geolocation Information ................................................................... 4

9. Non-Disclosure .................................................................................................. 4

10. Sealing .............................................................................................................. 5

**TO:** **Verizon and its Agents and Employees and any Successor Service Provider as Defined Herein**

This Court having on this date granted an application by the United States for an Order of Interception pursuant to the provisions of Chapter 119 of Title 18, United States Code ("Title III") authorizing Special Agents of the Federal Bureau of Investigation (the "Investigating Agency"), and other investigative and law enforcement officers, assisted, if necessary, by authorized translators, to intercept and record wire communications occurring over the Target Cellphone specified below; and it appearing that Verizon (hereinafter referred to as "Service

Provider") is a provider of electronic communication service within the sense of 18 U.S.C.

§ 2510(15) and is the service provider for the Target Cellphone;

NOW, THEREFORE, IT IS HEREBY ORDERED:

**1. Target Cellphone**
This Order applies to the cellular telephone assigned telephone number 973-901-4101

(the "Target Cellphone").

**2. Successor Target Cellphones**
In addition to the Target Cellphone, this Order shall also apply to any other cellphone

with the same telephone number as above ("Successor Target Cellphone"), within the Period of

Interception. References below to the Target Cellphone shall include any Successor Target

Cellphone.

**3. Successor Service Provider**
This Order applies to the Service Provider and to any subsequent service provider

(Successor Service Provider) who may hereafter provide service to the Target Cellphone or

Successor Target Cellphone, upon service of this Order by the Investigating Agency on the

Successor Service Provider.

**4. Duration of Order**
Except as provided in the Pen Register provisions of this Order, this Order shall be in

effect for a 30-day period to be measured from the earlier of the date on which investigative or

law enforcement officers begin to conduct interception under this Court's Order, or ten days

from the date of this Court's Order.

**5. Technical Assistance**
Pursuant to 18 U.S.C. § 2518(4), the Service Provider and any Successor Service

Provider shall furnish to the Investigating Agency forthwith all information, facilities, and

technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services that such provider is according the persons whose communications are to be intercepted. The Service Provider shall submit to the Investigating Agency for compensation reasonable expenses incurred in the furnishing of such facilities and technical assistance.

**6. Pen Register Trap and Trace Order**

Pursuant to 18 U.S.C §§ 3121 *et seq.*, the Service Provider and any Successor Service Provider for the Target Cellphone are directed, for a period of 30 days from the date of this Order, or until termination of the period of interception specified in the Duration of Order above, whichever is longer, to provide to the Investigating Agency all information, facilities and technical assistance necessary for the installation and use of a pen register and trap and trace device on the Target Cellphone, to record and decode dialing, routing, addressing, or signaling information transmitted by the Target Cellphone, and to capture the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication to the Target Cellphone, including all communication-forwarding information, and the date, time and duration of such communications.

**7. Pen Register with Cell Site Information**

Pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. §§ 3121-3126 and 2703(d), the Service Provider and any Successor Service Provider for the Target Cellphone are directed, for a period of 30 days from the date of this Order, or until termination of the period of interception specified in the Duration of Order above, whichever is longer, to

provide to the Investigating Agency all cell site and tower face information available concerning the Target Cellphone and communications made over the Target Cellphone.

### 8. Additional Geolocation Information

Pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Service Provider and any Successor Service Provider for the Target Cellphone are ordered to provide, during the period of interception specified in the Duration of Order above, all information, facilities and technical assistance needed and available to ascertain the physical location of the Target Cellphone, including but not limited to data indicating the specific latitude and longitude of, or other precise location information concerning, the Target Cellphone, without geographic limit. The technical assistance needed includes initiating a signal to determine the location of the Target Cellphone on the service provider's network or in relation to such other reference points as may be reasonably available, at such intervals and times as directed by the Investigating Agency, unobtrusively and with a minimum of interference to service to the Target Cellphone, and at any time of day or night.

### 9. Non-Disclosure

To avoid prejudice to this criminal investigation, Service Provider, any Successor Service Provider, as well as their agents and employees, shall not disclose or cause the disclosure of this Order, or the interceptions or provision of assistance and facilities that this Order authorizes, to any person, other than its agents and employees who require the information to effectuate the purposes of this Order, and that, in particular, no disclosure be made to the telephone users involved, or to any actual or potential interceptee.

**10. Sealing**

To avoid premature disclosure of the investigation, guard against flight of suspects or the loss of evidence, and to better ensure the safety of agents and others, this Order to Service Provider is ordered to be sealed and filed with the clerk for the Eastern District of New York until ordered unsealed by the Court or by another judge of competent jurisdiction, except that copies of this Order to Service Provider may be provided to the FBI and to the Government, and be served on service providers as may be necessary to effect the order's purpose.

Dated: Brooklyn, New York

December 16th, 2015

THE HONORABLE MARGO K. BRODIE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In the Matter of the Application of the
United States of America for
Authorization to Intercept Wire
Communications Occurring over the
Cellular Telephone Initially Identified as
973-901-4101, USAO Reference No.
2014R01194.

**Order of Interception**

**Sealed**

**15 Misc. 2468**

## Contents

I. Findings ......................................................................................................................... 2

  A. The Target Cellphone ..................................................................................................... 2

  B. Use of Target Cellphone for Criminal Purposes ............................................................ 2

  C. Types of Communications ............................................................................................. 2

  D. Territorial Scope ........................................................................................................... 3

  E. Target Subjects and Target Offenses ............................................................................. 3

  F. Objectives of the Interception ....................................................................................... 3

  G. Normal Investigative Techniques ................................................................................. 4

  H. DOJ Authorization ....................................................................................................... 4

II. Order of Interception ...................................................................................................... 4

  A. Period of Interception .................................................................................................. 4

  B. Territorial Scope and Type of Communications ............................................................ 5

  C. Successor Target Cellphones ........................................................................................ 5

  D. Successor Service Provider ........................................................................................... 5

  E. Minimization ................................................................................................................ 5

  F. Periodic Reports ........................................................................................................... 6

  G. Inventory ..................................................................................................................... 6

III. Ancillary Orders ........................................................................................................... 6

  A. Technical Assistance .................................................................................................... 6

  B. Pen Register and Trap and Trace .................................................................................. 6

  C. Order for Geolocation Information and Delayed Notice and Return ............................... 7

  D. Order for Expedited Provision of Subscriber and Service Information Concerning
Communications Devices in Communication with the Target Cellphone ............................. 7

IV. Sealing ......................................................................................................................... 8

**TO:** **Special Agents of the Federal Bureau of Investigation and Other Authorized Personnel**

Application under oath having been made before me by Scott Hartman, an Assistant United States Attorney for the Southern District of New York and an investigative or law enforcement officer in the sense of 18 U.S.C § 2510(7), for an order pursuant to the provisions of Chapter 119 of Title 18, United States Code ("Title III"), authorizing the interception and recording of wire communications, and for certain ancillary investigative orders; and full consideration having been given to the matters set forth in the Application and supporting documents:

## I. Findings
The Court hereby finds that:

### A. The Target Cellphone
The Target Cellphone that is the subject of this Order is currently assigned telephone number 973-901-4101. The Target Cellphone is currently subscribed to in the name of "Carmine Garcia," with address 59 Metro Vista Drive, Hawthorne, New Jersey. The current Service Provider for the Target Cellphone is Verizon Wireless.

### B. Use of Target Cellphone for Criminal Purposes
There is probable cause to believe that certain of the Target Subjects, during the Period of Interception herein applied for, will use the Target Cellphone in connection with, to facilitate, to accomplish, and to commit the Target Offenses specified herein, and that additional communications of the same type will occur during the Period of Interception herein requested.

### C. Types of Communications
There is probable cause to believe that the foregoing use of the Target Cellphone will include voice communications, messages left for and retrieved from voicemail. In addition, there

is probable cause to believe that the foregoing use of the Target Cellphone will include relevant background conversations involving persons in the vicinity of the Target Cellphone when the Target Cellphone is active or in use.

### D. Territorial Scope

Pursuant to 18 U.S.C. § 2518(3), interception of communications within the territorial jurisdiction of this court, and outside that jurisdiction, is authorized.

### E. Target Subjects and Target Offenses

There is probable cause to believe that one or more of CARMINE GARCIA, TINDARO ("Tino") CORSO, RICHARD O'CONNOR, CARLOS GOMEZ, a/k/a "Gogo," JOSEPH DATELLO, and others unknown (the "Target Subjects"), are involved in offenses involving the distribution, and possession with intent to distribute, of controlled substances, to wit, cocaine and heroin, the use of wire facilities to facilitate the same, the maintenance of drug involved premises, conspiracy to do the same and attempts to do the same, in violation of 21 U.S.C. §§ 841, 843(b), 846, 848, and 856, and Title 46, United States Code, Section 70503, collectively, the "Target Offenses."

### F. Objectives of the Interception

There is probable cause to believe that the interception hereby authorized will reveal (i) the nature, extent and methods of the Target Subjects' commission of the Target Offenses; (ii) the identities of the Target Subjects, to the extent currently unknown, as well as their accomplices, aiders and abettors, co-conspirators, and participants in their illegal activities; (iii) the source, receipt, and distribution of contraband and money involved in the commission of the Target Offenses; (iv) the locations and items used in furtherance of those activities; (v) the existence and locations of records; (vi) the locations and sources of resources used to finance the

illegal activities; (vii) the locations and disposition of the proceeds from and relating to those activities; and (viii) the location and other information necessary to seize and/or forfeit contraband, money and items of value, and other evidence of or proceeds of the commission of the Target Offenses. In addition, the intercepted communications are expected to constitute admissible evidence of the commission of the Target Offenses.

### G. Normal Investigative Techniques
It has been adequately established that normal investigative techniques have been tried and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous.

### H. DOJ Authorization
Pursuant to 18 U.S.C. § 2516(1), this Application has been authorized by Kenneth A. Blanco, Deputy Assistant Attorney General, an official of the United States Department of Justice specially designated by the Attorney General of the United States to authorize applications for the interception of wire or oral communications.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

## II. Order of Interception
Pursuant to 18 U.S.C. § 2518, Special Agents of the FBI and other investigative and law enforcement officers, as defined in 18 U.S.C. § 2510(7), assisted, if necessary, by authorized translators, are authorized to intercept and to record wire communications of the Target Subjects over the Target Cellphone; and it is further ORDERED that:

### A. Period of Interception
This Order of Interception shall be executed as soon as practicable after it is signed. Interceptions need not automatically terminate when the first communication described herein has been obtained, but rather may continue until the Objectives of the Interception set forth

above are fully achieved, or for a period of thirty (30) days, whichever is earlier. The thirty days are measured from the earlier of the date on which investigative or law enforcement officers begin to conduct interception under this Order of Interception, or ten days from the date of this Order.

**B. Territorial Scope and Type of Communications**
Pursuant to 18 U.S.C. § 2518(3), interception of wire communications that are subject to interception under Title III occurring within the Eastern District of New York is hereby authorized. Interception of messages that are subject to interception under Title III left to or retrieved from voicemail for the Target Cellphone; and interception of background conversations that are subject to interception under Title III occurring in the vicinity of the Target Cellphone while the telephone is active or otherwise in use, are also hereby authorized, with all intercepted communications to be routed through and first intercepted in the Eastern District of New York.

**C. Successor Target Cellphones**
This Order of Interception applies to any Successor Target Cellphone. By "Successor Target Cellphone is meant a cellphone with the same telephone number as the Target Cellphone.

**D. Successor Service Provider**
In addition, in the event that the Service Provider changes during the course of the Interception Period, interception may continue with the successor service provider under the terms of this Order of Interception and accompanying Order to Service Provider without further order of this court.

**E. Minimization**
Pursuant to 18 U.S.C. § 2518(5), (i) interception shall be conducted in such a way as to minimize the interception of wire communications not otherwise subject to interception under

Title III, as set forth in the Government's Application for this Order and the Affidavit submitted in support of the Application; and (ii) in the event the intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

### F. Periodic Reports

Pursuant to 18 U.S.C. § 2518(6), the Government shall provide to the Court a report on or about the tenth and twentieth days (as computed pursuant to Fed. R. Crim. P. 45) following the date of the Order or the date interception begins, whichever is later, showing what progress has been made toward the achievement of the Objectives of the Interception and the need for continued interception.

### G. Inventory

Pursuant to 18 U.S.C. § 2518(8)(d), no inventory of the results of the interception for which authorization is now sought need be made before 90 days from the date of the expiration of the Order of Interception or extension thereof, or at such later time as this Court or another judge of competent jurisdiction, upon further application and for good cause shown, may order.

## III. Ancillary Orders

### A. Technical Assistance

The Government's application for an order pursuant to 18 U.S.C. § 2518(4) directing the Service Provider to provide technical assistance is granted to the extent set forth in the accompanying Order to Service Provider.

### B. Pen Register and Trap and Trace

The Government having certified that the information likely to be obtained upon installation and use of the requested pen register and trap and trace is relevant to an ongoing

criminal investigation, the Government's application pursuant to 18 U.S.C. §§ 3121 *et seq.* for a Pen Register and Trap and Trace order is granted to the extent set forth in the accompanying Order to Service Provider.

### C. Order for Geolocation Information and Delayed Notice and Return

There being probable cause to believe that the information sought will constitute or lead to evidence of the Target Offenses, the Government's application under 18 U.S.C. § 2703(c)(1)(A) and Fed. R. Crim. P. 41(b) and, to the extent applicable to cell site information, 18 U.S.C. §§3121-3126 and 2703(d), for an order directing the Service Provider to provide geolocation information is granted to the extent set forth in the accompanying Order to Service Provider. Pursuant to 18 U.S.C. § 3103a(b) and Rule 41(f)(3), because earlier notice may seriously jeopardize the investigation, endanger the life or physical safety of investigating agents or other persons, lead to flight of suspects, loss of evidence, and/or intimidation of witnesses, delay of notice under Rule 41(f) of the acquisition of the geolocation information is hereby authorized until 120 days after the date of this Order. Return on the warrant for geolocation information under Rule 41(f) shall be made within 10 days after acquisition of the geolocation information (including any extensions) has ended.

### D. Order for Expedited Provision of Subscriber and Service Information Concerning Communications Devices in Communication with the Target Cellphone

There being reason to believe that the information sought is relevant and material to an ongoing criminal investigation, and that absent such an order the affected service providers may not provide the necessary information sufficiently promptly to effectuate the purposes of the interception herein ordered, the Government's application pursuant to 18 U.S.C. § 2703 for an order for expedited provision of information concerning a telephone or other device in

communication with the Target Cellphone, is hereby granted, to the extent set forth in the accompanying Order for Expedited Provision of Subscriber and Service Information. The above-referenced Investigating Agency is hereby authorized, during the Period of Interception herein authorized, to serve a copy of that order on any electronic or wire communications service provider that provides service to a telephone or device in communication with the Target Cellphone for information regarding any such telephone or communications device.

**IV. Sealing**

To avoid premature disclosure of the investigation, guard against flight of suspects or the loss of evidence, and to better ensure the safety of agents and others, this Order, the Application, including the Affidavit and accompanying proposed orders, as well as any Periodic Reports, shall be sealed and filed with the clerk for the Eastern District of New York until ordered unsealed by the Court or by another judge of competent jurisdiction, except that copies of the Order of Interception, Order to Service Provider, and Order for Expedited Provision of § 2703(d)(2) Information may be provided to the Federal Bureau of Investigation and to the Government, and be served on service providers as may be necessary to effect the order's purpose.

Dated: Brooklyn, New York

_December 16_, 2015

Time: _3:51 PM_

THE HONORABLE MARGO K. BRODIE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| In the Matter of the Application of the United States of America for Authorization to Intercept Wire Communications Occurring over the Cellular Telephone Initially Identified as 973-901-4101, USAO Reference No. 2014R01194. | **Application for Order Authorizing the Interception of Wire Communications over a Cellular Telephone**<br><br>**Sealed**<br><br>**15 Misc. 2468** |
|---|---|

## Contents

I. Specifications ........................................................................................................................... 2

   A. Scope of Application............................................................................................................ 2

   B. DOJ Authorization ............................................................................................................. 3

   C. Supporting Affidavit .......................................................................................................... 3

   D. Target Subjects.................................................................................................................... 4

   E. Target Offenses .................................................................................................................. 4

   F. Objectives of the Interception............................................................................................ 4

   G. Target Cellphone and Service Provider. ........................................................................... 5

      1. Target Cellphone and Successor Target Cellphone ...................................................... 5

      2. Successor Service Provider........................................................................................... 5

   H. Communications Features of Target Cellphone................................................................. 5

      1. Wire Communications Capabilities .............................................................................. 5

   I. Background Conversations................................................................................................... 6

   J. Territorial Scope and Jurisdiction ...................................................................................... 6

   K. Period of Interception......................................................................................................... 6

   L. Monitoring, Personnel and Minimization.......................................................................... 6

   M. Prior Applications.............................................................................................................. 7

II. Probable Cause and Normal Investigative Techniques............................................................ 7

   A. Probable Cause................................................................................................................... 7

      1. Commission of Target Offenses ................................................................................... 7

      2. Use of Target Cellphone ............................................................................................... 7

      3. Objectives of the Interception...................................................................................... 8

      4. Insufficiency of Alternative Investigative Techniques ................................................ 8

III. Orders Requested .................................................................................................................... 8

   A. Request for Order of Interception ...................................................................................... 8

      1. Period of Interception ................................................................................................... 8

      2. Scope...................................................................................................................... 8

      3. Monitoring and Minimization............................................................................... 9

      4. Periodic Reports.................................................................................................. 9

      5. Inventory ............................................................................................................. 9

   B. Request for Order to Service Provider ........................................................................ 9

      1. Technical Assistance to Accomplish the Interception ..................................... 9

      2. Pen Register and Trap and Trace Information............................................... 10

      3. Geolocation Information and Delayed Notice and Return ........................... 10

      4. Non-Disclosure .............................................................................................. 12

      5. Successor Service Provider............................................................................ 12

   C. Request for Order for Expedited Provision of Information Concerning Communications Devices.................................................................................................................................. 12

  IV. Sealing ..................................................................................................................... 14

State of New York       )
County of Kings        ) ss.:
Eastern District of New York )

     Scott Hartman, an Assistant United States Attorney in the Southern District of New York,

being duly sworn, states:

# I. Specifications
## A. Scope of Application
     I am an investigative or law enforcement officer within the meaning of 18 U.S.C.

§ 2510(7) - that is, an attorney authorized by law to prosecute or participate in the prosecution of

offenses enumerated in 18 U.S.C. § 2516. I respectfully submit this Application pursuant to the

provisions of Chapter 119 of Title 18, United States Code ("Title III"), for an Order of

Interception authorizing the interception and recording of wire communications by the Target

Subjects specified below over the Target Cellphone specified below. By this application I further

request the Court to issue ancillary orders and warrants (a) to the Service Provider, and any

Successor Service Provider, for (i) necessary technical support to accomplish the interception,

pursuant to 18 U.S.C. § 2518(4); (ii) pen register and trap and trace information for the Target

Cellphone, pursuant to 18 U.S.C. §§ 3121 *et seq.*; and (iii) cell site and other geolocation information for the Target Cellphone, pursuant to Fed. R. Crim. P. 41, with delayed notification to the person affected pursuant to Rule 41(f)(3) & 18 U.S.C. § 3103a(b); and (b) to any wire and electronic communications service provider, pursuant to 18 U.S.C. § 2703(d), for expedited provision of subscriber, toll and service records for telephones and communications devices in communication with the Target Cellphone.

### B.  DOJ Authorization

Pursuant to the authority vested in her by Section 2516 of Title 18 of the United States Code, by Order Number 3536-2015, dated June 11, 2015, the Attorney General of the United States has specially designated appropriate officials of the Criminal Division to exercise the power conferred on her by Section 2516 of Title 18 of the United States Code to authorize applications for a court order authorizing the interception of wire communications. Under the power delegated by special designation of the Attorney General, Kenneth A. Blanco, Deputy Assistant Attorney General, an appropriately designated official in the Criminal Division has authorized this application. A copy of that official's memorandum authorizing this application, as well as a copy of the Attorney General's Order designating that official, are attached to this application as Exhibit A.

### C.  Supporting Affidavit

This Application is based on and incorporates by reference the December 16 Affidavit in Support of Application for Order Authorizing the Interception of Wire Communications Over a Cellular Telephon ("the Affidavit") submitted by Task Force Officer Joseph Chimienti of the Federal Bureau of Investigation (the "Investigating Agency") in support of this Application.

### D. Target Subjects

The Target Subjects whose communications are sought to be intercepted are: CARMINE GARCIA, TINDARO ("Tino") CORSO, RICHARD O'CONNOR, CARLOS GOMEZ, a/k/a "Go Go," JOSEPH DATELLO, and others unknown.

### E. Target Offenses

The Target Offenses that are the subject of this Application, each of which is a predicate offense under 18 U.S.C. § 2516, are: offenses involving the distribution, and possession with intent to distribute, of controlled substances, to wit, cocaine and heroin, the use of wire facilities to facilitate the same, the maintenance of drug involved premises, conspiracy to do the same and attempts to do the same, in violation of 21 U.S.C. §§ 841, 843(b), 846, 848, and 856, and Title 46, United States Code, Section 70503, collectively, the "Target Offenses."

### F. Objectives of the Interception

The objectives of the interception sought herein are to reveal to the greatest extent possible: (i) the nature, extent and methods of the Target Subjects' commission of the Target Offenses; (ii) the identities of the Target Subjects, to the extent currently unknown, as well as their accomplices, aiders and abettors, co-conspirators, and participants in their illegal activities; (iii) the source, receipt, and distribution of contraband and money involved in the commission of the Target Offenses; (iv) the locations and items used in furtherance of those activities; (v) the existence and locations of records; (vi) the locations and sources of resources used to finance the illegal activities;(vii) the locations and disposition of the proceeds from and relating to those activities; and (viii) the location and other information necessary to seize and/or forfeit contraband, money and items of value, and other evidence of or proceeds of the commission of the Target Offenses. In addition, the intercepted communications are expected to constitute admissible evidence of the commission of the Target Offenses.

### G. Target Cellphone and Service Provider.
#### 1. Target Cellphone and Successor Target Cellphone
The current telephone number of the Target Cellphone is 973-901-4101. The Target Cellphone is currently subscribed to in the name of "Carmine Garcia," with address 59 Metro Vista Drive, Hawthorne, New Jersey. The current Service Provider for the Target Cellphone is Verizon Wireless. At this time, the key identifier for the Target Cellphone, and the means by which it will be identified to the Service Provider for installation of the intercept, is the telephone number.

Authorization to intercept "Successor Target Cellphones" is also sought. By "Successor Target Cellphone" is meant a cellphone with the same telephone number as the Target Cellphone, but where the device identification number has changed.

#### 2. Successor Service Provider
As explained in the Affidavit, because cellphone users can change service providers, this Application also applies to any subsequent service provider who may provide service to the Target Cellphone ("Successor Service Provider"). It is requested that the Order of Interception apply without further order of this Court to any Successor Target Cellphone, as discussed above, and to any Successor Service Provider for the Target Cellphone. Further, unless otherwise indicated, references herein to the "Target Cellphone" or "Service Provider" include any successors thereto.

### H. Communications Features of Target Cellphone
#### 1. Wire Communications Capabilities
In addition to normal voice communications capabilities, the Service Provider for the Target Cellphone has advised us that the Target Cellphone has voicemail capabilities. It is requested that the Order of Interception also apply to messages left to, and retrieved from, voicemail, that are otherwise subject to interception under Title III.

### I. Background Conversations

As explained in the Affidavit, it is requested that the Order of Interception also apply to relevant background conversations which are likely to be overheard over the Target Cellphone while the Target Cellphone is active or otherwise in use, that are otherwise subject to interception under Title III.

### J. Territorial Scope and Jurisdiction

With the technical assistance of the service provider for the Target Cellphone, all communications intercepted over the Target Cellphone will have been routed through and first intercepted in the Eastern District of New York. *See United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir. 1992) ("the interception must also be considered to occur at the place where the redirected contents are first heard").

### K. Period of Interception

The Investigating Agency will execute the Order of Interception as soon as practicable after it is signed. Inasmuch as the illegal operation described herein is a continuing conspiracy involving numerous persons as yet unidentified and unknown, it is requested that authorization to intercept not automatically terminate when the first communication described herein has been obtained, but rather continue until the Objectives of the Interception are fully achieved, or for a period of thirty (30) days, whichever is earlier. The thirty days are measured from the earlier of the date on which investigative or law enforcement officers begin to conduct interception under the Order of Interception, or ten days from the date of that Order.

### L. Monitoring, Personnel and Minimization

As set forth in the Affidavit, all monitoring will be conducted by personnel authorized to do so under 18 U.S.C. § 2518(5), and in such a way as to minimize the interception of communications not otherwise subject to interception under Title III. To this end, written

Minimization Instructions will be provided by me or another Assistant United States Attorney supervising this interception to the monitoring agents and personnel.

### M. Prior Applications
I have been informed that reviews have been done of the wire and electronic surveillance files of the Drug Enforcement Administration, the Federal Bureau of Investigation, and the United States Immigration and Customs Enforcement. Based on these reviews, I have been informed that there have been no prior applications for court authorization to intercept, or approval of interception of, wire, oral, or electronic communications of the Target Subjects or over the Target Cellphone, except as may be set forth in the Affidavit.

## II. Probable Cause and Normal Investigative Techniques
### A. Probable Cause
I have discussed the circumstances of the above investigation with Task Force Officer Joseph Chimienti of the Federal Bureau of Investigation, who is assigned at present to the New York Field Division of the FBI, and who has participated in the investigation herein. I have also examined Taskforce Officer Chimienti's Affidavit submitted in support of this Application. I respectfully submit that the Affidavit establishes:

#### 1. Commission of Target Offenses
There is probable cause to believe that one or more of the Target Subjects has committed, is committing, and will continue to commit one or more of the Target Offenses during at least the Period of Interception sought herein.

#### 2. Use of Target Cellphone
There is probable cause to believe that one or more of the Target Subjects will use the Target Cellphone in furtherance of, in connection with, to facilitate, to accomplish, and to commit one or more of the Target Offenses, and that additional communications of the same type will occur during the Period of Interception requested herein.

### 3. Objectives of the Interception
There is probable cause to believe that the interception for which authorization is now

sought will help to achieve the Objectives of the Interception specified above.

### 4. Insufficiency of Alternative Investigative Techniques
As set forth more fully in the Affidavit, normal investigative procedures have been tried

and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous.

## III. Orders Requested
### A. Request for Order of Interception
On the basis of the allegations contained in this Application and the Affidavit, it is hereby

requested that this Court issue an Order of Interception in the form attached containing the

substance of the following provisions:

### 1. Period of Interception
Pursuant to 18 U.S.C. §§ 2518(4)(e) & (5), authorizing special agents of the Investigating

Agency and other investigative and law enforcement officers, assisted, if necessary, by

authorized translators, to intercept and to record wire communications of the Target Subjects

over the Target Cellphone, with execution of the Order of Interception to commence as soon as

practicable after the Order of Interception is signed and to not automatically terminate when the

first communication described herein has been obtained, but rather to continue until the

Objectives of the Interception are fully achieved, or for a period of thirty (30) days, whichever is

earliest. The thirty days is measured from the earlier of the date on which investigative or law

enforcement officers begin to conduct interception under the Order of Interception , or ten days

from the date of that Order.

### 2. Scope
Pursuant to 18 U.S.C. § 2518(3), authorizing the interception of wire communications

that are subject to interception under Title III occurring within the Eastern District of New York;

authorizing the interception of messages that are subject to interception under Title III left to or

retrieved from voicemail for the Target Cellphone; and authorizing the interception of relevant background conversations that are subject to interception under Title III occurring in the vicinity of the Target Cellphone while the telephone is active or otherwise in use, with all intercepted communications to be routed through and first intercepted in the Eastern District of New York.

### 3. Monitoring and Minimization
Pursuant to 18 U.S.C. § 2518(5), authorizing monitoring and minimization of intercepted communications to be conducted as detailed in the accompanying affidavit.

### 4. Periodic Reports
Pursuant to 18 U.S.C. § 2518(6), that the Government shall provide to the Court a report on or about the tenth and twentieth days (as computed pursuant to Fed. R. Crim. P. 45) following the date of the Order or the date interception begins, whichever is later," showing what progress has been made toward the achievement of the Objectives of the Interception and the need for continued interception.

### 5. Inventory
Pursuant to 18 U.S.C. § 2518(8)(d), that no inventory of the results of the interception for which authorization is now sought need be made before 90 days from the date of the expiration of the Order of Interception or any extension thereof, or at such later time as this Court or another judge of competent jurisdiction, upon further application and for good cause shown, may order.

### B. Request for Order to Service Provider
On the basis of the allegations contained in this Application and the Affidavit submitted in support thereof, it is hereby requested that this Court include within the Order of Interception and the Order to Service Provider the substance of the following provisions:

### 1. Technical Assistance to Accomplish the Interception
Pursuant to 18 U.S.C. § 2518(4), that the Service Provider for the Target Cellphone, and any Successor Service Provider for the Target Cellphone, furnish the technical assistance

necessary to accomplish the interception unobtrusively and with a minimum of interference with services to the persons whose communications are to be intercepted, and maintain service to the Target Cellphone for the period of interception and any extensions thereto. This assistance is required to accomplish the Objectives of the Interception. Reasonable expenses incurred pursuant to this activity will be processed for payment by the Investigating Agency.

**2. Pen Register and Trap and Trace Information**

Pursuant to 18 U.S.C. §§ 3121 *et seq.*, that the Investigating Agency may request, and the Service Provider and any Successor Service Provider for the Target Cellphone shall provide, for 30 days, or until the end of the Period of Interception set forth above, whichever is later, installation and use of a pen register and trap and trace device on the Target Cellphone, to record and decode dialing, routing, addressing, or signaling information transmitted by the Target Cellphone, and to capture the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication to the Target Cellphone, including all communication-forwarding information, and the date, time and duration of such communications. It is further requested that any service provider to whom this order applies be directed not to provide notice of the order to any other person unless or until otherwise ordered by the Court. Pursuant to 18 U.S.C. § 3122(b)(2), I hereby certify that the information likely to be obtained by installation and use of a pen register and trap and trace device is relevant to this ongoing criminal investigation.

**3. Geolocation Information and Delayed Notice and Return**

Pursuant to 18 U.S.C. § 2703(c)(1)(A) and Rule 41 of the Federal Rules of Criminal Procedure, that the Investigating Agency may request, and the Service Provider and any Successor Service Provider for the Target Cellphone shall provide, during the Period of

Interception set forth above, all information, facilities and technical assistance needed to ascertain the physical location of the Target Cellphone, including but not limited to E-911 Phase II data, data indicating the specific latitude and longitude of, or other precise location information concerning, the Target Cellphone. Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the Target Cellphone at the start and end of any call. (Absent a warrant, cell-site data is also available under the pen register provisions of 18 U.S.C. §§ 3121-3126 and the records provisions of 18 U.S.C. §2703(d), with which this application complies *a fortiori*.) The technical assistance needed includes initiating a signal to determine the location of the Target Cellphone on the service provider's network or in relation to such other reference points as may be reasonably available, at such intervals and times as directed by the Investigating Agency, unobtrusively and with a minimum of interference to service to the Target Cellphone, and at any time of day or night, owing to the potential need to locate the Target Cellphone outside of daytime hours. As explained in further detail in the Affidavit, there is probable cause to believe that the location of the Target Cellphone will constitute or lead to evidence of the Target Offenses. Pursuant to 18 U.S.C. § 3103a(b) and Rule 41(f)(3) of the Federal Rules of Criminal Procedure, it is further requested that, because earlier notice may seriously jeopardize the investigation, endanger the life or physical safety of investigating agents or other persons, lead to flight of suspects, loss of evidence, and/or intimidation of witnesses, the Court authorize delay of notice of the acquisition of the geolocation information until 120 days after the date of the Court's order authorizing that acquisition. It is also requested that the return on the warrant for geolocation information under Rule 41(f) be made, by analogy to the requirements for a tracking warrant, within 10 days after

acquisition of the geolocation information (including any extensions) has ended, before a United States Magistrate Judge, under seal.

### 4. Non-Disclosure
That the Service Provider and any Successor Service Provider and their respective agents and employees not disclose or cause the disclosure of the Order to Service Provider to any person other than those of their agents and employees who require said information to accomplish the interception ordered, and that, in particular, the Service Provider and any Successor Service Provider and their respective agents and employees shall in no event make such disclosure to the telephone user involved, or to any actual or potential interceptee.

### 5. Successor Service Provider
That in the event that the service provider for the Target Cellphone changes during the course of the interception, the Order to Service Provider shall, upon service of the Order, apply to any Successor Service Provider without further order of this court; and that the Service Provider and any Successor Service Provider inform the Investigating Agency immediately if the service provider changes during the course of the Interception Period, or if the telephone number for the Target Cellphone is supplied to another service provider.

### C. Request for Order for Expedited Provision of Information Concerning Communications Devices
Pursuant to 18 U.S.C. § 2703(d), to expedite achievement of the Objectives of the Interception, it is hereby requested that the Court enter an order directing that any electronic or wire communications service provider that provides service to a telephone or other device in communication with the Target Cellphone, provide to the Investigating Agency, within 24 hours of service of request by the FBI, all published and non-published subscriber information, including telephone or instrument number or other subscriber number or identity and any temporarily assigned network address; means and source of payment for such service (including

any credit card or bank account number); and local and long distance call and call duration records for up to a 30-day period immediately preceding the FBI's request. The Application and Affidavit set forth specific and articulable facts showing reasonable grounds to believe that the information sought is relevant and material to this ongoing criminal investigation. Pursuant to 18 U.S.C. § 2705(b), it is further requested that for the reasons set forth above, the order include a direction that such service provider not provide notice to the subscriber or customer as to whom information is provided until (i) for six months following the date of this order, (ii) and thereafter, without ten (10) days prior notice to the Investigating Agency in case a further delay in providing notice is warranted..

## IV. Sealing

It is further requested that to avoid premature disclosure of the investigation, guard against flight of suspects or the loss of evidence, and to better ensure the safety of agents and others, this Application, including the Affidavit and accompanying proposed orders, as well as any Periodic Reports, be sealed and filed with the clerk for the Eastern District of New York until ordered unsealed by the Court or by another judge of competent jurisdiction, except that copies of the Order of Interception, Order to Service Provider, and ancillary orders requested herein may be provided to the Investigating Agency and to the Government, and be served on service providers as may be necessary to effect the order's purpose.

Scott Hartman
Assistant United States Attorney
Southern District of New York
(212) 637-2357

Sworn to before me this
16th day of December, 2015

THE HONORABLE MARGO K. BRODIE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF NEW YORK



Washington, D.C. 20530

<u>MEMORANDUM</u>                                    DEC 1 6 2015

TO:         Monique Perez Roth, Director
            Office of Enforcement Operations
            Criminal Division

ATTN:       Scott Hartman and Hagan Scotten

FROM:       Leslie R. Caldwell
            Assistant Attorney General
            Criminal Division

SUBJECT:    Authorization for Interception Order Application

        This is with regard to your recommendation that
an appropriately designated official of the Criminal Division
authorize an application to a federal judge of competent
jurisdiction for an order under Title 18, United States Code,
Section 2518, authorizing for a thirty (30) day period the
initial interception of wire communications occurring to and
from the cellular telephone bearing the number (973) 901-4101,
subscribed to by Carmine Garcia, 59 Metro Vista Drive,
Hawthorne, New Jersey, in connection with an investigation into
possible violations of Title 21, United States Code, Sections
841, 843, 846, 848, and 856, Title 46, United States Code,
Section 70503, by Carmine Garcia, Tindaro Corso, Richard
O'Connor, Carlos Gomez, Joseph Datello, and others as yet
unknown.

        By virtue of the authority vested in the Attorney General
of the United States by Section 2516 of Title 18, United States
Code, the Attorney General has by Order Number 3536-2015, dated
June 11, 2015, designated specific officials in the Criminal
Division to authorize applications for court orders authorizing
the interception of wire or oral communications. As a duly
designated official in the Criminal Division, this power is
exercisable by the undersigned. WHEREFORE, acting under this
delegated power, the appropriately designated official

authorizes the above-described application to be made by any
investigative or law enforcement officer of the United States as
defined in Section 2510(7) of Title 18, United States Code.

The authorization is also intended to apply to the target
telephone number referenced above regardless of service
provider, and to background conversations intercepted in the
vicinity of the target telephone while the telephone is off the
hook or otherwise in use.

Leslie R. Caldwell
Assistant Attorney General
Criminal Division

DEC 1 6 2015

Date

Kenneth. Blanco

KENNETH A. BLANCO
DEPUTY ASSISTANT ATTORNEY GENERAL
CRIMINAL DIVISION



U.S. Department of Justice

Criminal Division

## Title III Implementation Information

With regard to the attached authorization of your request to apply for a court order authorizing an interception pursuant to Title III, please be advised of the following:

**Review Authorization Memorandum** - It is the final responsibility of the applicant to review the Authorization Memorandum to ensure accuracy. The Authorization Memorandum must be **ATTACHED** when submitting your application for court authorization. In particular, please verify that the target facility identifiers, statutory violations, and target subjects are accurate and consistent with the affidavit, application, and order you submitted for review to OEO.

**Pending Charges / Privileged Communications** - Monitoring personnel must exercise care to avoid intercepting communications involving a recognized privilege or communications of persons under indictment that may pertain to the strategy that they contemplate employing as a defense. If such a communication is overheard inadvertently, monitoring personnel are to make notation of the incident in the intercept log and make an immediate report to the attorney who is supervising the interception.

**Sealing** - It is the obligation of the supervising attorney to ensure that recordings of intercepted conversations are protected adequately, and are sealed by the court on a regular basis. This should occur at the end of each 30-day period, preferably even if the interception is authorized to continue beyond the initial 30-day period. If there is a break in the interception period, the supervising attorney should ensure that recordings are sealed by the court as soon as practicable thereafter.

**Computation of the 30-Day Period** - Because of conflicting court decisions regarding the counting of the 30-day period for purposes of Title III interceptions, the supervising attorney should ensure that the method of computing time complies with District precedent and practice. Monitoring personnel should be alerted to the date interceptions must be discontinued absent an extension by court order authorizing continued interceptions.

**Extensions** - All extensions **MUST** be approved by the Criminal Division before they are filed with the court.

**Reporting** - Section 2519 of Title 18, United States Code, requires that the Attorney General make an annual report to the Administrative Office of the United States Courts (AOUSC) each year regarding electronic surveillance by a federal agency under Title III. The statute requires you, through your investigative agency, to report specific post surveillance information, i.e., the number of resulting trials, the number of motions to suppress, whether the motions were granted or denied, and the number of convictions. These reports are compiled by AOUSC and provided to Congress and the public.

**Contact and Submission** - OEO's Electronic Surveillance Unit (ESU) can be reached at (202) 514-6809. The ESU duty attorney can be reached at (202) 353-5265. Requests for surveillance authorized under T-III must be submitted to ESU by email through ESU.Requests@usdoj.gov or through our FAX-to-email server on (803) 726-2180.



# Office of the Attorney General
Washington, D.C.

ORDER NO. 3536-2015

SPECIAL DESIGNATION OF CERTAIN OFFICIALS OF THE CRIMINAL DIVISION AND
NATIONAL SECURITY DIVISION TO AUTHORIZE APPLICATIONS FOR COURT
ORDERS FOR INTERCEPTION OF WIRE OR ORAL COMMUNICATIONS

By virtue of the authority vested in me as the Attorney General, including 28 U.S.C. § 510, 5 U.S.C. § 301, and 18 U.S.C. § 2516(1), and in order to preclude any contention that the designations by the prior Attorney General have lapsed, the following officials are hereby specially designated to exercise the power conferred by Section 2516(1) of Title 18, United States Code, to authorize applications to a Federal judge of competent jurisdiction for orders authorizing or approving the interception of wire and oral communications by the Federal Bureau of Investigation or a Federal agency having responsibility for the investigation of the offense(s) as to which such application is made, when such interception may provide evidence of any of the offenses specified in Section 2516 of Title 18, United States Code:

1.    The Assistant Attorney General in charge of the Criminal Division, any Acting Assistant Attorney General in charge of the Criminal Division, any Deputy Assistant Attorney General of the Criminal Division, and any Acting Deputy Assistant Attorney General of the Criminal Division;

2.    The Assistant Attorney General for National Security, any Acting Assistant Attorney General for National Security, any Deputy Assistant Attorney General for National Security, and any Acting Deputy Assistant Attorney General for National Security, with respect to those matters delegated to the supervision and responsibility of the Assistant Attorney General for National Security. These officials of the National Security Division shall exercise this authority through, and in full coordination with, the Office of Enforcement Operations within the Criminal Division.

Attorney General Order No. 3055-2009 of February 26, 2009, is revoked effective at 11:59 p.m. of the day following the date of this order.

11 June 2015
Date

Loretta E. Lynch
Attorney General

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of the United States of America for Authorization to Intercept Wire Communications Occurring over the Cellular Telephone Initially Identified as 973-901-4101, USAO Reference No. 2014R01194. | **Affidavit in Support of Application for Order Authorizing the Interception of Wire Communications over a Cellular Telephone**<br><br>**Sealed**<br><br>**15 Misc. 2468** |

## Contents

I. Specifications ................................................................................................................ 3

  A. Affiant ................................................................................................................... 3

  B. Purpose of Affidavit ............................................................................................. 4

  C. Target Subjects. .................................................................................................... 4

  D. Target Offenses .................................................................................................... 4

  E. Objectives of the Interception ............................................................................. 5

  F. Target Cellphone and Service Provider ............................................................... 5

    1. Target Cellphone ............................................................................................... 5

    2. Successor Service Provider ............................................................................... 6

    3. Application to Successor Target Cellphone and Successor Service Provider. ... 6

  G. Communications Features of Target Cellphone ................................................... 7

  H. Background Conversations .................................................................................. 7

  I. Territorial Scope and Jurisdiction ........................................................................ 7

  J. Period of Interception .......................................................................................... 7

  K. Monitoring Agents and Personnel ....................................................................... 8

  L. Minimization of Wire Communications .............................................................. 8

  M. Prior Applications ............................................................................................... 9

II. The Investigation and Probable Cause .................................................................... 12

  A. Probable Cause ................................................................................................... 12

  B. Basis and Scope of Declarations ........................................................................ 12

  C. Details of the Investigation ............................................................................... 13

    1. Background to the Investigation ..................................................................... 13

2. CI-1 Meets GOMEZ, O'CONNOR, and GARCIA ..................................................... 15

3. GARCIA Discusses His Involvement in Cocaine Trafficking ..................................... 16

4. GARCIA Uses the Target Cellphone to Discuss His Plans to Further an International Drug Transaction. ..................................................................................................... 19

D. Analysis of Communications Records for Target Cellphone ......................................... 23

1. Communications with 646-567-8483, used by TINDARO "TINO" CORSO.............. 23

2. Communications with 561-862-8639, used by RICHARD O'CONNOR .................... 24

III. Normal Investigative Techniques .................................................................................... 25

A. Insufficiency of Alternative Investigative Techniques ................................................... 25

1. Undercover Officers.......................................................................................................... 25

2. Confidential Informants and Cooperating Witnesses .................................................. 27

3. Physical Surveillance ....................................................................................................... 28

4. Pole Camera ...................................................................................................................... 30

5. Geolocation Information .................................................................................................. 31

6. Telephone Records and Pen Registers .......................................................................... 31

7. Results of Prior Title III Interceptions ......................................................................... 32

8. Grand Jury Process ........................................................................................................... 33

9. Search Warrants ................................................................................................................ 34

10. Arrests .............................................................................................................................. 35

11. Witness Interviews.......................................................................................................... 35

12. Trash Searches ................................................................................................................. 36

13. Parallel and Related Investigations .............................................................................. 36

IV. Ancillary Investigative Orders........................................................................................... 37

A. Order to Service Provider................................................................................................... 37

1. Technical Assistance to Accomplish the Interception .................................................. 37

2. Pen Register and Trap and Trace Information ............................................................. 37

3. Geolocation Information and Delayed Notice and Return .......................................... 37

4. Non-Disclosure ................................................................................................................. 39

5. Successor Service Provider.............................................................................................. 39

B. Order for Expedited Provision of Information Concerning Communications Devices Related to the Interception ....................................................................................................... 40

V. Sealing................................................................................................................................... 41

State of New York      )
County of Kings       ) ss.:
Eastern District of New York   )

Joseph Chimienti, a Task Force Officer with the Federal Bureau of Investigation, being

duly sworn, deposes and states:

## I. Specifications
### A. Affiant

I am an investigative or law enforcement officer of the United States within the meaning

of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is empowered by law to

conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I

have been a Task Force Officer with the FBI for approximately five and a half years, and have

been a member of the New York City Police Department since 1996 and currently hold the rank

of Detective. In my time as a law enforcement officer, I have participated in investigations of

unlawful drug trafficking and organized crime groups, including La Cosa Nostra ("LCN") and,

among other things, have conducted or participated in surveillance, the execution of search

warrants, debriefings of informants, reviews of taped conversations and drug records, and have

participated in investigations that included the interception of wire communications. Through my

training, education and experience, I have become familiar with the manner in which illegal

drugs are transported, stored, and distributed, the methods of payment for such drugs, the

laundering of narcotics proceeds, and the "lingo" and coded language used by narcotics

traffickers. I have also become familiar with the methods of operation, structures, norms, and

"lingo" used by LCN groups.

### B. Purpose of Affidavit

I respectfully submit this Affidavit in support of the Application of Assistant United States Attorney Scott Hartman pursuant to the provisions of Chapter 119 of Title 18, United States Code ("Title III"), for an Order of Interception authorizing the interception and recording of wire communications by the Target Subjects specified below over the Target Cellphone specified below. I further submit this Affidavit in support of the Government's Application for ancillary orders and warrants (a) to the Service Provider, and any Successor Service Provider, for (i) necessary technical support to accomplish the interception, pursuant to 18 U.S.C. § 2518(4); (ii) pen register and trap and trace information for the Target Cellphone pursuant to 18 U.S.C. §§ 3121 *et seq.*; and (iii) geolocation information for the Target Cellphone, pursuant to Fed. R. Crim. P. 41, with delayed notification to the person affected pursuant to Rule 41(f)(3) & 18 U.S.C. § 3103a(b); and (b) to any wire and electronic communications service provider, pursuant to 18 U.S.C. § 2703(d) for expedited provision of subscriber, toll and service records for telephones and communications devices in communication with the Target Cellphone.

### C. Target Subjects.

As also set forth in the Application, the Target Subjects whose communications are sought to be intercepted are: CARMINE GARCIA, CARLOS GOMEZ, a/k/a "Go Go," JOSEPH DATELLO, TINDARO ("Tino") CORSO, RICHARD O'CONNOR, and others unknown.

### D. Target Offenses

As also set forth in the Application, the Target Offenses that are the subject of this Application, each of which is predicate offense under 18 U.S.C. § 2516, are: offenses involving the distribution, and possession with intent to distribute, of controlled substances, to wit, cocaine and heroin, the use of wire facilities to facilitate the same, the maintenance of drug involved

premises, conspiracy to do the same and attempts to do the same, in violation of 21 U.S.C. §§ 841, 843(b), 846, 848, and 856, and Title 46, United States Code, Section 70503, collectively, the "Target Offenses."

### E. Objectives of the Interception

As also set forth in the Application, the objectives of the interception sought herein are to reveal to the greatest extent possible: (i) the nature, extent and methods of the Target Subjects' commission of the Target Offenses; (ii) the identities of the Target Subjects, to the extent currently unknown, as well as their accomplices, aiders and abettors, co-conspirators, and participants in their illegal activities; (iii) the source, receipt, and distribution of contraband, and money involved in those activities; (iv) the locations and items used in furtherance of those activities; (v) the existence and locations of records; (vi) the locations and sources of resources used to finance their illegal activities; (vii) the locations and disposition of the proceeds from and relating to those activities; and (viii) the location and other information necessary to seize and or forfeit contraband, money and items of value, and other evidence of or proceeds of the commission of the Target Offenses. In addition, these interceptions are expected to constitute admissible evidence of the commission of the Target Offenses.

### F. Target Cellphone and Service Provider
#### 1. Target Cellphone

The Target Cellphone is a Verizon cellphone that uses CDMA (for Code Division Multiple Access) cellphone technology. CDMA cellphones have a serial number - an "ESN" (Electronic Serial Number), "MEID" (Mobile Equipment Identification Number), or "IMEI" (International Mobile Equipment Identifier) - stored on a built-in, non-removable memory chip within the cellphone. To permit communication with the cellphone via a telephone number, the

CDMA service provider designates the telephone number (which is sometimes referred to as a Mobile Identification Number, or MIN) to a device bearing the given ESN, MEIN, or IMEI. A customer who has obtained a new cellphone can ask the service provider to designate the old telephone number to the new device with the new ESN, MEIN, or IMEI; conversely, a customer may also retain his or her current cellphone device, but request that a new telephone number be assigned to the device. It is to capture communications after any such switches in customer service that authorization to intercept "successor" cellphones is sought. At this time, the key identifier for the Target Cellphone, and the means by which it will be identified to the Service Provider for installation of the intercept, is the telephone number. The telephone number for the Target Cellphone is 973-901-4101, and it is subscribed to in the name of "Carmine Garcia," with address 59 Metro Vista Drive, Hawthorne, New Jersey.

### 2. Successor Service Provider

I know from the foregoing that the user of such a cellphone can switch the provider of service to that cellphone from one service provider to another service provider ("Successor Service Provider").

### 3. Application to Successor Target Cellphone and Successor Service Provider.

To avoid interruption in the execution of the Order of Interception, it is requested that the Order of Interception apply without further order of this Court to any Successor Target Cellphones, as well as to any Successor Service Provider for the Target Cellphone. Further, unless otherwise indicated, references herein to the "Target Cellphone" or "Service Provider" include any successors thereto.

### G. Communications Features of Target Cellphone

In addition to normal voice communications capabilities, the Service Provider for the Target Cellphone has advised us that the Target Cellphone has voicemail capabilities. It is requested that the Order of Interception also apply to messages left to, and retrieved from, voicemail, that are otherwise subject to interception under Title III.

### H. Background Conversations

It is common practice that individuals using cellphones frequently speak in the presence of and while personally communicating with other individuals on the subjects related to the cellphone communication. It is accordingly requested that the Order of Interception also apply to background conversations overheard over the Target Cellphone while the Target Cellphone is active or otherwise in use, that are otherwise subject to interception under Title III.

### I. Territorial Scope and Jurisdiction

This Court has territorial jurisdiction to authorize the interception of wire and electronic communications sought in this application because, as a technical matter, all interceptions will automatically be routed to, and first heard or otherwise reviewed in, the Eastern District of New York even if the Target Cellphone is not physically located in the Eastern District of New York. (In the event the Target Cellphone leaves the United States during the period of interception, interceptions will continue to be routed to, and first heard or otherwise reviewed in, the Eastern District of New York, to the extent the Target Cellphone's communications continue to be transmitted via the Service Provider's system.)

### J. Period of Interception

As set forth in the Application, the FBI will execute the Order of Interception as soon as practicable after it is signed. Inasmuch as the illegal operation described herein is a continuing

conspiracy involving numerous persons as yet unidentified and unknown, it is requested that authorization to intercept not automatically terminate when the first communication described herein has been obtained, but rather continue until the Objectives of the Interception are fully achieved, or for a period of thirty (30) days, whichever is earlier. The thirty days are measured from the earlier of the date on which investigative or law enforcement officers begin to conduct interception under the Order of Interception, or ten days from the date of that Order.

### K. Monitoring Agents and Personnel
Consistent with 18 U.S.C. § 2518(5), the interceptions for which authorization is sought will be conducted only by Government personnel, and by individuals operating under a contract with the Government under the supervision of an investigative or law enforcement officer authorized to conduct the interception.

### L. Minimization of Wire Communications
Consistent with 18 U.S.C. § 2518(5), monitoring agents and personnel will conduct the interception in such a way as to minimize the interception of wire communications not otherwise subject to interception under Title III. Monitoring of conversations will terminate immediately when it is determined that the conversation is unrelated to communications subject to interception under Title III. Interception will be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the Target Subjects or any of their confederates, when identified, are participants in the conversation, unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If a conversation has been minimized, the monitoring agents will spot check to ensure that the conversation has not turned to criminal matters. In the event the intercepted

communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization will be accomplished as soon as practicable after such interception. Monitoring agents and personnel will also operate under specific Minimization Instructions provided by the Assistant United States Attorney supervising the interception.

## M. Prior Applications

I have been informed that reviews of the electronic surveillance files were conducted for the Drug Enforcement Administration on December 7, 2015, December 8, 2015, and December 14, 2015; the Federal Bureau of Investigation on December 7, 2015 and December 14, 2015; and United States Immigration and Customs Enforcement on December 7, 2015 and December 14, 2015, and that those reviews revealed no prior applications for Court authorization to intercept wire, oral, or electronic communications involving the Target Cellphone, the Target Subjects, or the places named herein, except as follows:

On August 14, 2015, this Court issued an order authorizing the interception of wire communications over a cellphone with dial number (646) 460-1097. The order listed CARLOS GOMEZ, a/k/a "Go Go," and JOSEPH DATELLO as a target subjects. The wiretap order was renewed by this Court on September 16, 2015; October 16, 2015; [1] November 16, 2015; and December 11, 2015. Interception pursuant to the December 11 order is ongoing and is expected to cease on or about January 9, 2016.

---

[1] During interception pursuant to the September 16 Order, the dial number of this cellphone changed to 347-417-0147. Because that number was a "successor cellphone" as defined in the order, interception continued. Subsequent orders have listed the 0147 dial number.

On November 10, 2015, this Court issued an order authorizing the interception of wire communications over a cellphone with dial number (929) 253-8107 (the "8107 Cellphone"). The order listed CARLOS GOMEZ, a/k/a "Go Go," and JOSEPH DATELLO as a target subjects. The wiretap order was renewed by this Court on December 11, 2015; interception pursuant to the December 11 Order is expected to cease on or about January 9, 2016.

On October 5, 2015, this Court issued an order authorizing the interception of wire communications over a cellphone with dial number 917-584-9545 used by DATELLO, listing GOMEZ, DATELLO, and O'CONNOR, among others, as target subjects. Interception pursuant to the October 5 Order began on or about October 6, 2015 and ceased on or about November 4, 2015.[2] After lapsing for a brief period, the wiretap order was renewed by this Court on November 18, 2015, at which time TINDARO ("TINO") CORSO was added as a target subject. Interception pursuant to the November 18 order remains ongoing and is scheduled to cease on or about December 18, 2015.

CORSO was also named as a Target Subject in multiple previous wiretaps authorized in the Southern District of New York. On or about April 15, 2008, the Honorable Loretta A. Preska, United States District Judge for the Southern District of New York, authorized a wiretap order for a telephone with call number 917-363-8629. The order listed TINDARO ("TINO") CORSO as a target subject, among others. The wiretap order was reauthorized on May 14, 2008 by Judge

---

[2] On September 4, 2015, this Court issued an order authorizing the interception of wire communications over a cellular telephone used by DATELLO, and listing GOMEZ and DATELLO, among others, as target subjects. Because, however, I later learned that DATELLO had changed his cellular telephone on or about September 3, 2015, interception pursuant to the September 4 Order was never initiated.

Preska, on June 13, 2008 by the Honorable John G. Koeltl, on July 15, 2008 by the Honorable Denise Cote, and on August 15, 2008, September 15, 2008 and October 15, 2008 by the Honorable Richard J. Sullivan.

On or about June 6, 2008, the Honorable Richard Holwell, United States District Judge for the Southern District of New York, authorized a wiretap order for a telephone with call number 516-976-6533. The order listed TINDARO ("TINO") CORSO as a target subject, among others. The wiretap order was reauthorized on July 15, 2008 by the Honorable Laura Taylor Swain.

On or about November 10, 2014, the Honorable Nelson Román issued a wiretap order for a telephone with the call number 914-621-8728. The order listed TINDARO "Tino" CORSO, among others, as a Target Subject. The wiretap order was reauthorized on or about December 10, 2014, January 9, 2015, and February 13, 2015, by Judge Román.

O'CONNOR was named as a target subjects in multiple orders of interception issued in the United States District Court for the Southern District of New York, specifically in orders issued on or about August 15, 2008 by Judge Richard J. Sullivan; on or about July 15, 2008 by Judge Denise L. Cote; also on or about July 15, 2008, by Laura T. Swain; on or about June 13, 2008 by Judge John G. Koeltl; and on or about May 14, 2008, by Judge Loretta A. Preska. These wiretaps focused on other members of the Luchese family who are not Target Subjects named herein. The wiretaps ceased interception in or about November 2008, and led to the arrest of several Luchese Family member and associates, although not O'CONNOR.

11

A "Richard O'Connor" who is believed to be the RICHARD O'CONNOR named as a target subject herein was named in an order of interception issued by Judge Jack B. Weinstein of the United States District Court for the Eastern District of New York on or about November 12, 1981.

## II.  The Investigation and Probable Cause
### A.  Probable Cause

For the reasons set out in this affidavit, I respectfully submit that there is probable cause to believe that one or more of the Target Subjects have committed, are currently committing, and will continue for at least the next 30 days to commit one or more of the Target Offenses; that one or more of the Target Subjects, during the period of interception sought, will use the Target Cellphone in furtherance of, in connection with, to facilitate, to accomplish, and to commit the Target Offenses specified herein; that additional communications of the same type will occur during the period of interception requested; and that the interception sought herein will achieve the Objectives of the Interception.

### B.  Basis and Scope of Declarations

This case is being investigated by the FBI. I have personally participated in the investigation and I make this affidavit based on my personal participation in this investigation, and based on reports made to me by FBI agents, analysts, and other law enforcement authorities. The technical information set forth herein is additionally based on agency training, review of agency and industry technical publications, information obtained from service providers, and review of other wiretap applications. Except where otherwise noted or the context otherwise makes clear, (i) the information set forth in this affidavit may include information provided to me by other law enforcement agents who have assisted in the investigation; (ii) wherever in this

affidavit I assert that a statement was made, the statement was made by another law enforcement officer (any of whom may have had either direct or hearsay knowledge of that statement) to whom I or other law enforcement officers have spoken or whose reports I have read and reviewed; (iii) such statements are reported in substance and in part; (iv) where I refer to the contents of previously recorded conversations (*e.g.*, consensual recordings or prior wiretap interceptions), my quotations and descriptions are based on preliminary draft transcripts and/or translations of those conversations; and (v) information resulting from surveillance sets forth either my personal observations or information provided directly or indirectly through other law enforcement officers who conducted such surveillance. Further, because this affidavit is being submitted for the limited purpose of securing an order authorizing the interception of wire communications, I have not included details of every aspect of this investigation to date. Facts not set forth herein are not being relied on in reaching my conclusion that orders should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application for an order authorizing the interception of wire communications.

## C. Details of the Investigation
### 1. Background to the Investigation
Since in or about 2010, I have participated in the FBI's long-running investigation of Italian organized crime under the umbrella of La Cosa Nostra (or "LCN"). LCN operates through entities known as "Families," of which there are five in the New York City area: the Genovese Organized Crime Family, the Gambino Organized Crime Family, the Luchese Organized Crime Family, the Colombo Organized Crime Family, and the Bonanno Organized Crime Family.

Members and associates of LCN have an established track record of criminal activity, including, among acts, murder, attempted murder, extortion, money laundering, and narcotics trafficking.

As a general matter, each of the families of LCN operates through groups of individuals known as "crews" and "regimes," most of which were based in New York City. Each "crew" has as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers are aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes are referred to as "connected" or identified as "with" a Soldier or other member of the Family. Associates participate in the various activities of the crew and its members. In order for an associate to become a made member of the Family, the associate must first be of Italian descent and typically needs to demonstrate the ability to generate income for the Family and/or the willingness to commit acts of violence. Each Capo is responsible for supervising the criminal activities of his crew and providing Soldiers and associates with support and protection. In return, the Capo typically receives a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as "tribute."

I believe that CARMINE GARCIA is an LCN associate affiliated in particular with the Bonanno Family of LCN. This determination is based on, among other things, GARCIA's criminal record, physical surveillance of known and suspected meetings of LCN members and

associates, consensually-recorded conversations among LCN associates, including GARCIA, and reporting by a cooperating witness ("CI-1"), some of which is described below.[3]

### 2. CI-1 Meets GOMEZ, O'CONNOR, and GARCIA

Since in or about August 2012, CI-1 has undertaken actions at the direction of the FBI in order to further the Investigation. I know from my review of CI-1's criminal history, my and other FBI Special Agents' conversations with CI-1, and consensually-recorded conversations made by CI-1 at the FBI's direction, among other things, that CI-1 is an "associate" of the Luchese Family and that, by virtue of his affiliation with LCN, he regularly associates with GARCIA and other LCN associates and members.

In or about October 2014, JOSEPH DATELLO, a Luchese soldier, introduced CI-1 to CARLOS GOMEZ, a/k/a "Go Go," as a source of narcotics imported from the Dominican Republic or coordinated by persons in the Dominican Republic. On or about October 23, 2014, DATELLO arranged for CI-1 to meet GOMEZ in the parking lot of a commercial location in Staten Island, New York. GOMEZ arrived at the location in a Black Acura MDX (the "Acura"). During a meeting recorded by CI-1, GOMEZ entered CI-1's vehicle and provided CI-1 with what GOMEZ presented as one kilogram of cocaine, in return for which CI-1 provided GOMEZ with $45,000 (which had been supplied by the FBI). GOMEZ informed CI-1 that this cocaine

---

[3] CI-1 has been cooperating with law enforcement for approximately three years. CI-1 is being paid for CI-1's cooperation. Information provided by CI-1 has proven reliable and has been corroborated, in part, by physical surveillance, physical evidence, audio recordings made by CI-1 at in-person meetings and, pursuant to a court-authorized consensual wiretap of phones used by CI-1, and information already known by law enforcement, some of which is discussed below. CI-1 has sustained multiple felony convictions, including an attempted murder at the behest of Luchese Family members and an attempted robbery. CI-1 has also sustained misdemeanor convictions for theft and narcotics offenses.

was not from GOMEZ's typical source, but was provided as a favor to DATELLO. GOMEZ stated that he had a shipment of cocaine from his regular source available in approximately three weeks, that this cocaine was higher quality, and that GOMEZ could sell that cocaine to CI-1. The FBI recovered the cocaine provided by CI-1, and confirmed that although it was in fact cocaine, substantially less than one kilogram was provided. GOMEZ subsequently provided the remainder of the promised kilogram to CI-1 on or about October 24, 2014. In the months that followed, GOMEZ, DATELLO, and CI-1 had multiple recorded conversations in which they made plans to purchase 1,000 kilograms of cocaine in South America for transportation to Greece, where it would then be distributed. Preparations for that shipment remain ongoing.

On or about April 15, 2015, CI-1 met DATELLO in Staten Island, New York. In a recorded conversation, DATELLO told CI-1, among other things, that DATELLO would put CI-1 in contact with RICHARD "Richie" O'CONNOR to conduct illegal cigarette transactions. I know from my review of FBI and criminal records, and my conversations with CI-1 that O'CONNOR is an associate of the Genovese LCN family who has two prior felony convictions for narcotics distribution. CI-1 later met O'CONNOR, and O'CONNOR reintroduced him to GARCIA, whom CI-1 knew from having previously served time with him in federal prison.

### 3. GARCIA Discusses His Involvement in Cocaine Trafficking
In the months that followed their being introduced, CI-1 began discussions with both O'CONNOR and GARCIA about the possibility of arranging the transport of a large amount of cocaine from South America to Europe, along the lines of the planned transaction involving DATELLO, CI-1, GOMEZ and two undercover agents who have been introduced to GOMEZ. During the past year, CI-1 has recorded multiple meetings with GARCIA during which they

have discussed, among other things, GARCIA's involvement in the narcotics trade. Those meetings include the following:

On or about May 30, 2015, CI-1 met O'CONNOR and CARMINE GARCIA at a restaurant in Matawan, New Jersey. In a recorded conversation, O'CONNOR, GARCIA, and CI-1 discussed previous and future narcotics transactions, including the planned deal between CI-1 and GOMEZ to import cocaine to Europe. During the conversation, GARCIA told CI-1 that he had a contact in South America who knew how to liquefy cocaine. Of this contact GARCIA said, in substance and in part, "My guy wanted me to go down there, 'cause he wanted to teach me how to do that." Garcia also bragged about his close ties to the political leadership in the Dominican Republic and the three men discussed the logistics of transporting cocaine from the Dominican Republic to Europe, including to Spain, where GARCIA claimed to have contacts.

Subsequently, on June 27, 2015, CI-1 again met with O'CONNOR and GARCIA in the vicinity of Belmar, New Jersey. During the meeting, which was covertly recorded by CI-1, O'CONNOR and GARCIA asked CI-1 about CI-1s anticipated cocaine transaction with GOMEZ. O'CONNOR warned CI-1 to be careful on the telephone, to which CI-1 replied that because none of the cocaine was intended for the United States, there was no conspiracy in this country. GARCIA then asked, "If you don't mind me asking, where are you going?" CI-1 replied that the cocaine he was purchasing with GOMEZ would be transported from South America to Greece by boat. CI-1, GARCIA, and O'CONNOR proceeded to discuss the price of cocaine and the amount that CI-1 would have to pay the "boat guys" to transport cocaine from South America to Europe. During the conversation, GARCIA mentioned the importance of

17

finding reliable transportation. He added that he speaks fluent Spanish and has friends everywhere who can provide him with significant amounts of cocaine, but without transportation, he cannot profit from his connections. GARCIA also inquired of CI-1 how much a kilogram of cocaine currently costs in Greece. CI-1 replied, "seventy five." GARCIA responded that he was just in Spain where a kilo was selling for "twenty five, twenty eight," which I understand to be $25,000. GARCIA also mentioned that he had been selling cocaine for "a long time."

On September 3, 2015, CI-1 met with GARCIA, O'CONNOR, and GOMEZ in Staten Island. During the meeting, which was covertly recorded by CI-1, the parties again discussed the possibility of transporting cocaine to Spain for sale to GARCIA's contacts there. GARCIA emphasized that whether the deal would work would depend on the price of cocaine in Spain and the price at which CI-1 could obtain cocaine. GARCIA discussed his contacts in the Dominican Republic and in Spain, and committed to work with CI-1 to find an outlet in Spain for the CI's cocaine if the prices were right. GARCIA emphasized that he would split the proceeds of any transaction with O'CONNOR 50/50. O'CONNOR boasted that GARCIA was expert at moving cocaine. GARCIA also bragged about his prior transactions involving large cocaine shipments. Among other things, GARCIA bragged about how much cocaine he had moved in the past, saying, in substance and in part, "I moved as many as 1,000 pieces, unloaded trailers, filled whole rooms." Based upon my training, my experience, my participation in this investigation, and my debriefing of CI-1, I believe that when GARCIA said he had "moved as many as 1,000

pieces," he was saying that he had arranged for the transportation of up to 1,000 kilograms of cocaine.

### 4. GARCIA Uses the Target Cellphone to Discuss His Plans to Further an International Drug Transaction.

In addition to the meetings recounted above, on or about October 21, 2015, CI-1 met CARMINE GARCIA and recorded a conversation with him. During the conversation, GARCIA said that he was preparing for a trip to South America, near Bolivia. Later in the conversation, GARCIA made clear that the purpose of the trip was to meet with his drug connection and that he was going by himself because, "I can't bring nobody with these people." GARCIA also asked CI-1 whether he had learned of an acquaintance of GOMEZ, a Dominican general, who GOMEZ has described to CI-1 as being capable of facilitating the export of cocaine from the Dominican Republic.

During the conversation, GARCIA also received an incoming call from a caller he identified as "Tino." On the recording made by the CI, GARCIA's side of the conversation can be heard. During the phone conversation, GARCIA told "Tino" that he would be going to South America in a couple of weeks. GARCIA and "Tino" also discussed the fact that GARCIA was "mad at [Tino's] other friend" and that he did not "want to have anything to do with him." After the call, GARCIA told CI-1, in substance, that he believed "Tino" had been promoted to the rank of "official captain" in the mafia.

I have reviewed cellphone records that document a call between the Target Cellphone and a cellphone with dial number 646-567-8483 that took place at the same time as the call between GARCIA and "Tino" that was recorded by CI-1, as reported above. According to

records maintained by the service provider of the cellphone with dial number 646-567-8483, the subscriber of this phone was previously "Consuelo Corso," who is believed, based upon public records checks, to be the wife of TINDARO "TINO" CORSO. More recently, this number has been intercepted in multiple communications with the cellphone with dial number 917-584-9545, used by DATELLO that is currently subject to an order of interception issued by this Court. In those communications, both the caller and DATELLO refer to the caller by name as "Tino." Additionally, CI-1 knows that DATELLO is an associate of TINDARO ("Tino") CORSO. Accordingly, I believe that the "Tino" with whom GARCIA was speaking on October 21 was CORSO.

I also believe that when GARCIA told CORSO that he would be traveling to South America, CORSO understood that the purpose of the trip was to coordinate a cocaine deal and potentially that CORSO stands to profit from that deal. The reason for my believe stems in part from the fact that, according to Government records of international travel, in November 2014, GARCIA and CORSO traveled together to Spain. As noted, Spain is the intended destination for the cocaine that GARCIA is attempting to procure in South America.

Additionally, shortly after that trip, on November 22, 2014, the FBI intercepted a call between CORSO and a fellow Luchese soldier, Joseph Venice, whose phone was subject to a court-ordered wiretap at that time. During the intercepted call, CORSO made reference to the fact that he had traveled to Spain with GARCIA and that his friends had been questioning him about the purpose of the trip. Although CORSO professed that the trip had been only a vacation, VENICE seemed to doubt that, telling CORSO, in substance, to "watch now." In light of CI-1's

conversations with GARCIA regarding GARCIA's drug connections in Spain, I believe that Venice's comment that CORSO should "watch" his step, suggests that both Venice and CORSO were aware that the purpose of the trip was to facilitate a cocaine deal and that they worried that law enforcement would discover this fact. Notably, although the call between Venice and CORSO took place some time ago, the timing is consistent with GARCIA's recent comment to CI-1 that he had been working on trying to get the cocaine from South America to Spain for several years. Furthermore, in a recorded call on November 11, 2015, GARCIA discussed with CI-1 his plans to leave the following day for Argentina and mentioned that CORSO had offered to drive him to the airport.

On October 31, 2015, CI-1 met with GARCIA again and recorded a further conversation with him regarding cocaine transactions. During the conversation, GARCIA counseled CI-1 that "the coke business is not like the junk business where you can make $25,000.00 - $30,000.00 a package." Based on my experience, I believe that by "junk business," GARCIA meant the heroin distribution business. In response to CI-1's comment that his anticipated cocaine purchase in the Dominican Republic was coming together, GARCIA again referenced his high-level connections in the Dominican Republic, noting that his "friend the general" was in the United States at the time. GARCIA also reaffirmed that if CI-1 could get cocaine to Spain at the right price, GARCIA would be able to move it through his connections. Later in the conversation, GARCIA again discussed his trip to South America and his anticipated meeting with his cocaine supplier, who he indicated was Argentinian. GARCIA said he had been working on his own cocaine deal for a few years and wanted to move the deal forward.

Thereafter, on or about, November 3, 2015, GARCIA used the Target Cellphone to call a cellphone used by CI-1 for which the FBI has secured a consensual wiretap. [4] During the call, which was recorded, the following exchange took place, in substance and in part:

GARCIA: ...Listen, I got other things more important to do now.

CI-1:      Alright.

GARCIA: Next week I'll probably be gone.

CI-1:      (UI)

GARCIA: I'm going away for, I'm going away for a whole week.

CI-1:      You going over there?

GARCIA: I'm probably, I'm going out of the country. Yeah.

CI-1:      Oh, alright. Well we'll talk in person. Um,...

Based on my conversations with CI-1 and my participation in this investigation, I believe that during this call, GARCIA informed CI-1 that he had finalized plans to travel to South America for the purposes of furthering his plan to transport cocaine from Argentina to Spain.

The purpose of the trip was confirmed when CI-1 met with GARCIA in person on November 7, 2015. During the meeting, which was covertly recorded by CI-1, the parties discussed various subjects related to the mafia. GARCIA also told CI-1 that he would be departing for Argentina that week to arrange his cocaine transaction.

---

[4] Unless otherwise indicated, CI-1's calls with the Target Cellphone occurred over two cellphones used by the CI for which the FBI has obtained consensual wiretaps. The calls were recorded, and the FBI has reviewed pen register data associated with these calls and has confirmed that the CI was in communication with the Target Cellphone.

On or about November 21, 2015, CI-1 met with GARCIA in and around Hawthorne, New Jersey. During the conversation, which was covertly recorded by CI-1, GARCIA recounted the results of his trip to Argentina. GARCIA told CI-1 that he had arranged for the cocaine that he controlled in South America to be transferred to Spain for sale. GARCIA told CI-1, that he had made arrangements for the cocaine to be liquefied and disguised in wine bottles and that the main obstacle to completing the transaction was GARCIA's need to identify a person in Europe to pose as a wine customer and order large quantities. GARCIA also discussed, among other things, the need to fine-tune the color of the liquid cocaine in order to make it resemble wine as much as possible. GARCIA also reaffirmed his willingness to help CI-1 distribute CI-1's cocaine in Spain if CI-1 could arrange transportation.

### D. Analysis of Communications Records for Target Cellphone

In connection with this investigation, I have analyzed toll records for the Target Cellphone, obtained pursuant to subpoena and pen register data for the period from November 7, 2015, through December 7, 2015 (the "Covered Period"). As set forth below, the Target Cellphone, which I believe is being used by Target Subject GARCIA, has been in frequent communication with the Target Subjects, including members and associates of the Luchese Family. The Target Cellphone has been used to make or receive approximately 260 telephone calls during the Covered Period.

#### 1. Communications with 646-567-8483, used by TINDARO "TINO" CORSO

The Target Cellphone was in telephone communication with a cellphone with the number 646-567-8483 (the "8483 Cellphone") approximately 10 times during the Covered Period, and the two phones have been in communication as recently as December 11, 2015. As discussed,

the 8483 Cellphone is believed to be used by TINDARO "TINO" CORSO. Multiple confidential sources identify CORSO as a captain in the Luchese Family and the owner of a security company that works for Luchese interests. In 1991, CORSO was convicted in Kings County Criminal Court of possessing gambling records in the second degree. In 1997, CORSO was convicted in federal court of conspiracy to commit robbery and was sentenced to a term of imprisonment of one year and one day.

### 2. Communications with 561-862-8639, used by RICHARD O'CONNOR

The Target Cellphone was in telephone communication with a cellphone with the number 561-862-8639 (the "8639 Cellphone") approximately 14 times during the Covered Period, and the two phones have been in communication as recently as December 13, 2015. In prior interactions, RICHARD O'CONNOR has provided the dial number of the 8639 Cellphone to CI-1 indicating that the 8639 Cellphone is his cellphone. CI-1 has also contacted O'CONNOR on the 8639 Cellphone on multiple occasions. As discussed, O'CONNOR has participated in discussions with CI-1 and GARCIA regarding potential large-scale cocaine transactions abroad. O'CONNOR has multiple prior convictions, including: a 1977 conviction in New York County Supreme Court of Attempted Grand Larceny in the Third Degree; a 1975 conviction in New York County Criminal Court of Possession of Burglar's Tools; a 1973 conviction in New York County Supreme Court of Assault in the Third Degree; a 1985 conviction in federal court of conspiracy to distribute heroin; and a 1991 conviction in federal court of possession of marijuana with intent to distribute.

### III. Normal Investigative Techniques
#### A. Insufficiency of Alternative Investigative Techniques

Consistent with 18 U.S.C. § 2518(3)(c), I respectfully submit that, for the reasons discussed below, normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to achieve the Objectives of the Interception herein sought.

#### 1. Undercover Officers

This investigation makes significant use of undercover officers. Two undercover FBI agents have met DATELLO and GOMEZ in confidential settings and openly discussed narcotics trafficking. But investigators have so far not found an opportunity that would allow for the introduction of an undercover agent capable of penetrating GARCIA's network of cocaine suppliers and distributors. That is unsurprising. My training and experience have taught me that drug traffickers are unlikely to discuss the full extent of their activities or their organization's membership when dealing with an "outsider" such as a UC, or any individual who has been recently introduced to a criminal organization. A UC is accordingly unlikely to be made aware of the full scope of the activities of the Target Subjects and other co-conspirators, and is similarly unlikely to be made aware of the detailed methods by which the various drug-trafficking organizations with which GARCIA is in contact (the "DTOs") operate (including the extent to which these organizations launders money and/or engages in acts of violence in furtherance if its drug-trafficking activities). Indeed, based on my experience as an organized crime investigator, I would expect that a UC would be highly unlikely to obtain any more information than necessary to complete a particular narcotics transaction.

This has proven true thus far in this case. GARCIA has so far resisted CI-1's efforts to learn more about the identities of GARCIA's high-level cocaine connections. CI-1, for example, has met with GARCIA on multiple occasions, and discussed a transaction for 1,000 kilograms, or more, of cocaine. But GARCIA has not disclosed to CI-1 any details regarding the identities of either his cocaine suppliers in South America or his cocaine distributers in Spain. Nor has he discussed what the DTOs do with their profits, and what methods the DTOs use to obtain and control narcotics shipments that purportedly originate in other countries. GARCIA has expressed interest in meeting an individual whom CI-1 has indicated is capable of repatriating drug proceeds, and who is in fact an undercover agent. Despite GARCIA's openness in this respect, however, given GARCIA's cautious dealing with CI-1, it is exceedingly unlikely that the undercover agent will be able to succeed in learning about GARCIA's broader distribution beyond what CI-1 has already been able to achieve.

Similarly, although GARCIA has made reference in passing to his close relationship with CORSO, he has not indicated what involvement, if any, CORSO and other LCN figures may have in GARCIA's cocaine trafficking.

Based on my training and experience, it would be dangerous to the investigation and potentially to the UCs for the UCs to inquire about any of these subjects. LCN families and foreign DTOs typically go to considerable lengths to prevent outsiders from learning about their organizations. And because the UCs have no plausible business reason to seek this information, inquiries on these subjects would, at the very least, like arouse suspicion of the UCs.

## 2. Confidential Informants and Cooperating Witnesses

As discussed above, this investigation makes extensive use of a confidential informant, CI-1. CI-1's information and cooperation has formed an essential part of the FBI's investigative efforts, allowing the FBI to obtain consensual recordings of telephone and personal conversations between the Target Subjects, and introducing two undercover FBI agents, UC-1 and UC-2, to the conspiracy.

Use of CIs will, however, be insufficient to accomplish all the goals of the investigation. As with undercover officers, I know based on my training and experience that foreign DTOs are extremely unlikely to provide "outsiders" with many details about their organizations, such as the DTO's full membership or its methods of operation. And whatever prospect CI-1 may have for further integration into the Luchese Family, CI-1 has no realistic chance of being invited to join any of the South American DTOs with which GARCIA is in contact or the network of cocaine distributors in Spain through whom he intends to sell the cocaine that he seeks to import. CI-1 has no longstanding relationship with GARCIA or these organizations, and as with the undercover agents, there is no plausible reason that CI-1 would need to form closer associations with the DTOs in order to complete the contemplated narcotics transactions. Moreover, CI-1 has no obvious ties to either South America or Spain, and already during another aspect of this investigation at least one associate of GOMEZ has refused to transact business with CI-1 because CI-1's ethnicity caused that associate to mistrust CI-1

At present, this investigation has not developed any cooperating witnesses to further the investigation. Although recruiting a cooperating witness is a long-term aim of the investigation, it is not practical to do so at present. In particular, arresting GARCIA -- the only known,

plausible cooperating witness as to the DTOs in Argentina and Spain – or otherwise attempting to compel him to cooperate, would likely require revealing significant portions of the investigation and thus jeopardizing its objectives. More generally, because the investigation involves many separate criminal organizations, the DTOs in the Dominican Republic, Argentina, Spain, and La Cosa Nostra, even successfully recruiting a cooperating witness from one organization would not provide access to the other organization, but would nonetheless risk compromising the investigation as a whole.

Wire surveillance is therefore necessary to learn details about these organizations' membership, and methods of operation of the relevant criminal organizations that cannot be learned by undercover agents, confidential informants, or cooperating witnesses.

### 3. Physical Surveillance

Law enforcement officers have conducted physical surveillance of GARCIA, O'CONNOR, GOMEZ, and DATELLO, and various meetings described above. This surveillance has helped verify the accounts of CI-1. The continued use of physical surveillance, however, is not a reasonable alternative to intercepting wire communications.

First, and as the discussion above demonstrates, the Target Subjects discuss narcotics-related activity either over the telephone or in-person in private spaces, neither of which is not amenable to physical surveillance. Second, physical surveillance is unlikely to be fruitful in this case in light of the nature of the criminal activity at issue, which consists generally of meetings typically conducted indoors, during which narcotics-trafficking is discussed and sometimes conducted. Generally speaking, physical surveillance is useful in generating information concerning the identity of an individual, where he or she resides, locations he or she frequents,

and the identities of the persons with whom he or she meets. But it provides limited direct evidence of the significance of the meetings. When used in conjunction with wire communication interception, however, physical surveillance has proved to be a useful investigative technique. It is expected that the information that can be obtained from the interception of wire communications over the Target Cellphone will help law enforcement agents to locate the identified Target Subjects and to identify co-conspirators, thereby enhancing the prospects for fruitful physical surveillance.

In addition, with the knowledge provided beforehand by wire surveillance that a meeting is to take place at a given location, or that proceeds or narcotics will travel over a certain route, it may be possible to establish physical surveillance at that location or on that route in advance, thus maximizing the value of investigators' time and minimizing the risks of discovery inherent in following subjects or remaining at target locations for extended periods of time.

But physical surveillance alone is unlikely to contribute anything more to the current investigation than has already been achieved by use of confidential informants and undercover agents. For example, I personally participated in a physical surveillance of GARCIA at John F. Kennedy Airport when he returned from Argentina on November 19, 2015. Although I was able to verify that GARCIA did in fact travel on the dates specified by his international travel records, he was picked up at the airport by a woman who appeared to be his wife, and he was not carrying an unusual amount of luggage or acting suspiciously in any fashion, and none of his conduct was overtly indicative of criminality. In order to allow investigators to tailor their surveillances

appropriately and to maximize the probative value of their efforts, authorization to intercept communications over the Target Cellphone is necessary.

### 4. Pole Camera

The FBI maintains a pole camera outside a social club in the Bronx, New York regularly used by Luchese Family members, and recurrently visited by DATELLO. This camera is not, however, likely to capture any evidence regarding the drug conspiracy involving GARCIA and his criminal associates in Spain and South America, because (1) GARCIA's narcotics-dealing associates abroad do not and cannot reasonably be expected to visit this location, which is exclusive to Luchese Family members and associates and (2) to the extent Luchese Family members discuss the narcotics transactions involving GARCIA at the social club, they do so indoors where these discussions cannot be captured by the pole camera.

The use of additional pole cameras is not likely to contribute meaningfully to this investigation. As discussed above, the criminal activity under investigation consists largely of telephone conversations and indoor meetings and transactions. A pole camera is of no utility in capturing a telephone conversation, and because DATELLO, GOMEZ, O'CONNOR, GARCIA, and others consistently meet at different locations (typically restaurants), there is no consistent location where placing a pole camera could be expected to capture future meetings. Nor is it feasible to place poll cameras abroad in Argentina or Spain given the bureaucratic obstacles and given that the Government presently has no information regarding the identities of GARCIA's contacts in either country and thus could not reliably identify a location to place such cameras.

### 5. Geolocation Information

Geolocation information will also be insufficient to accomplish the full objectives of the investigation. Geolocation information can help law enforcement determine the particular locations that an individual frequents, but it cannot help law enforcement determine which of those locations are visited for innocuous reasons and which are visited in connection with criminal activities. Thus, even if geolocation information is used successfully to identify locations frequented by GARCIA or other target subjects, that information by itself will be insufficient to determine whether those locations are connected to narcotics activity—and therefore is unlikely to provide a basis to obtain warrants to search any particular locations. Similarly, and because it cannot differentiate between criminal and non-criminal movement, geolocation information is unlikely to provide any insight as to the foreign DTOs' members, sources of supply for narcotics, past acts of violence committed by members of any of the criminal organizations under investigation, or where the proceeds of their criminal activities are stored. For example, as discussed above, law enforcement was able to determine that GARCIA traveled to Argentina this fall to meet with at least one cocaine supplier, but only through consensual in-person and telephone calls with CI-1 was the Government able to determine the reason for the trip.

### 6. Telephone Records and Pen Registers

Telephone toll records have been used and are continuing to be used in this investigation. Among other things, telephone records have assisted agents in confirming that several of the Target Subjects have been in contact with each other. For example, law enforcement agents first

learned that GARCIA communicates with TINO CORSO, by analyzing the call records of their respective phones.

In general, however, telephone records provide only limited information; these methods will not enable law enforcement to identify with certainty the persons involved in committing the Target Offenses, nor will they reveal the extent and nature of the activities of a drug trafficking organization. Among other problems, it is oftentimes extremely difficult to associate an individual with a telephone number. For example, the phone numbers discussed herein were obtained primarily from CI-1, but Target Subjects such as GARCIA and CORSO are unlikely to provide CI-1 or the UCs with the numbers of other criminal associates.

Further, toll records, unlike the interceptions requested herein, do not provide real-time evidence of the content of communications, which are an essential tool not only in providing opportunities to identify the members of the targeted narcotics conspiracy and interdict its activities, but also to be used as evidence of the commission of those activities. Law enforcement can only expect to identify fully the nature and scope of the targeted activities through the combination of wire surveillance, visual surveillance, and other investigatory tools.

### 7. Results of Prior Title III Interceptions

This Court has previously issued multiple orders authorizing Title III interceptions in connection with this investigation. In particular, on August 14, 2015, this Court issued an order authorizing the interception of wire communications over a cellphone used by GOMEZ that also listed DATELLO as a target subject. The wiretap order was renewed by this Court on September 16, 2015; October 16, 2015; November 16, 2015; and December 11, 2015. Interception pursuant to the December 11 order is ongoing and will continue until January 9, 2015. Also, on November

10, 2015, this Court issued an order authorizing the interception of wire communications over another cellphone used by GOMEZ. The wiretap order was renewed by this Court on December 11, 2015.

Additionally, as discussed, on October 5, 2015 and November 18, 2015, this Court issued wiretap orders for a cellphone used by JOSEPH DATELLO that listed O'CONNOR and (in the case of the November 18 order) CORSO as target subjects.

Those interceptions have not, however, fully accomplish the goals of the investigation because, among other things, GARCIA does not generally speak over the telephone with either DATELLO or GOMEZ, and thus has not been intercepted pursuant to the prior wiretap orders. Indeed, the purpose of the interception sought herein is to learn more about GARCIA's separate dealings with cocaine suppliers in South America and distributors in Europe who do not appear to have any relationship or affiliation with either GOMEZ or DATELLO. Moreover, as discussed, GARCIA has kept the identities of his cocaine supplier in Argentina and his distributor in Spain secret even from CI-1. There is thus no reason to believe that any evidence of the identity of GARCIA's cocaine associates will result from the wiretaps on the phones of DATELLO and GOMEZ that are currently ongoing.

### 8. Grand Jury Process
Grand jury processes are not capable of accomplishing the full objectives of this investigation. While certain documents, such as cellphone subscriber records, can and have been obtained through grand jury subpoenas, the grand jury process is unlikely to be useful in developing evidence concerning drug trafficking. Witnesses who could provide additional relevant evidence to a grand jury have not been identified and/or would themselves be

participants in the narcotics trafficking activities under investigation. Such individuals would face prosecution themselves; it is unlikely therefore that any of them would testify voluntarily. Nor would it be desirable at this time to seek immunity for such individuals and to compel their testimony, as immunizing them could thwart the public policy that they be held accountable for their crimes. And while the issuance of a grand jury subpoena to any potential witnesses likely would not lead to the discovery of critical information, it would undoubtedly alert both the subpoenaed witness and likely the Target Subjects as well to the pendency of this investigation, which could jeopardize not only the investigation but the safety of UCs and CIs involved in it.

### 9. Search Warrants

Applications for search warrants at physical locations are not feasible or appropriate at this stage of the investigation. Although adequate evidence may exist, or potentially could be developed, to support searches of identified conspirators such as GOMEZ, DATELLO, and O'CONNOR, the anticipated results of those searches would not materially advance the investigation. It is possible that narcotics and related evidence might be recovered, but that would only confirm what law enforcement already knows – that is, that GOMEZ, O'CONNOR and the other subjects of the investigation are involved in trafficking significant quantities of narcotics. It is unlikely, at best, that such searches would reveal any of the information still sought by law enforcement, such as the full membership of the Dominican, Argentenian, and Spanish DTOs, their methods of operation and source of supply, or where they store the profits of their narcotics sales.

Moreover, searches of locations that have been identified would alert the Target Subjects to the presence of the investigation and thereby cause them to destroy evidence or otherwise

conceal their narcotics activities from law enforcement. Accordingly, without recourse to the wire surveillance requested herein, the other law enforcement agencies involved in this investigation cannot effectively meet the goals of this investigation.

### 10. Arrests

At present, arrests are not a viable means to accomplish the goals of the investigation. Although probable cause likely exists to arrest GARCIA and others for narcotics trafficking crimes, many of their criminal associates have not yet been identified such as GARCIA's suppliers in Argentina) and, as a corollary, have not yet been sufficiently investigated to enable a successful prosecution. Arresting GARCIA would likely alert GARCIA's conspirators to the investigation, making further investigation difficult if not impossible. Even if GARCIA chose to cooperate with law enforcement, his co-conspirators would likely destroy evidence and flee before that cooperation was sufficiently developed to allow further arrests. Wire surveillance, in conjunction with other investigatory techniques, will enable law enforcement to learn the identities of co-conspirators and to develop evidence concerning their criminal activities without alerting them to the existence of the investigation

### 11. Witness Interviews

For many of the same reasons that grand jury process does not appear to be a promising method of investigation in this case, the use of witness interviews does not appear to be feasible or appropriate at this stage. Witnesses who could provide additional relevant evidence either have not yet been identified or would themselves be participants in the narcotics trafficking activities under investigation. Indeed, because the Target Subjects' meet and operate secretly, and because they are trafficking narcotics at the wholesale level (rather than making street-level

retail sales) it is unlikely that persons not involved in the conspiracy will be able provide any material evidence concerning the conspiracy. Further, witnesses are often extremely reluctant to testify against members of a DTO or organized crime Family—or even meet with law enforcement officers to discuss the DTO or organized crime Family's operations—for fear of reprisal from members of the DTO or gang.

### 12. Trash Searches

Trash searches are also not a reasonable alternative to wire surveillance. To begin with, because this investigation is primarily focused on large but infrequent narcotics transactions, and because the Target Subjects exchange information in person and over the telephone, it is unlikely that their criminal activity produces trash that will provide further information about their criminal activities. In addition, several of GARCIA's co-conspirators reside in Argentina and Spain, where the Government does not possess a reliable capability to surreptitiously collect and analyze trash. As to the subjects who are in the United States, a search of GARCIA's trash might develop some evidence about GARCIA's own criminal activity, but that would tell law enforcement nothing about GARCIA's higher-level co-conspirators in Argentina and Spain.

### 13. Parallel and Related Investigations

Although I am aware of related investigations into the Luchese Family by other FBI agents and by other law enforcement agencies, to my knowledge none have access to GARCIA and CI-1, or through them to the DTOs operating in Argentina and Spain with which GARCIA is doing business.

## IV. Ancillary Investigative Orders

I respectfully submit the following additional facts and circumstances in support of the Government's Application for certain ancillary investigative orders necessary to effectuate the purposes of the Order of Interception and the needs of this Investigation.

### A. Order to Service Provider
#### 1. Technical Assistance to Accomplish the Interception

Consistent with 18 U.S.C. § 2518(4), to effectuate the Order of Interception, the FBI will require the Service Provider for the Target Cellphone, and any Successor Service Provider for the Target Cellphone, to furnish the technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with services to the persons whose communications are to be intercepted, and maintain service to the Target Cellphone for the period of interception and any extensions thereto. Reasonable expenses incurred pursuant to this activity will be processed for payment by the FBI.

#### 2. Pen Register and Trap and Trace Information

The pen register and trap and trace information sought in the Government's Application (incorporated by reference but for the sake of brevity not repeated herein) is needed to identify who is calling, and who is being called from, the Target Cellphone. This information is relevant to the investigation in this matter, and indeed is essential to assist in achieving the Objectives of the Interception.

#### 3. Geolocation Information and Delayed Notice and Return

Providers of cellular telephone service generally have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service. The most common geolocation information consists of (i) cell-site data, also known as "tower/face information" or cell tower/sector records; and (ii) E-911 Phase II data,

also known as GPS data or latitude-longitude data. Cell-site data identifies the cell towers (*i.e.*, antenna towers covering specific geographic areas) that receive a radio signal from the cellular telephone and, in some cases, the sector (*i.e.*, 120° face) of the towers to which the telephone connects. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. In some instances the service provider may send a signal to the cellphone to facilitate or trigger the generation and collection of geolocation information. I respectfully submit that there is probable cause to believe that the geolocation information sought in the Government's Application (incorporated by reference but for the sake of brevity not repeated herein) will assist in achieving the Objectives of the Interception by allowing location of, and as appropriate, the surveillance of, the Target Cellphone and its user, at times relevant to the commission of the Target Offenses. (Absent a warrant, cell-site data is also available under the pen register provisions of 18 U.S.C. §§ 3121-3126 and the records provisions of 18 U.S.C. §2703(d), with which this application complies *a fortiori*.)  No physical installation of a tracking device, as discussed in Fed. R. Crim. P. 41(e)(2)(C), will be required; this information will be provided by means available to the Service Provider. But to the extent this request is otherwise deemed to fall within the confines of that rule, it is further requested, pursuant to 18 U.S.C. § 3103a(b) and Rule 41(f)(3), that the Court authorize delay of notice of the acquisition of the geolocation information until 120 days after the date of the Court's order authorizing that acquisition. It is also requested that the return on the warrant for geolocation information under Rule 41(f) be made, by analogy to the

requirements for a tracking warrant, within 10 days after acquisition of the geolocation information (including any extensions) has ended, before a United States Magistrate Judge, under seal. Delay of notice is justified under 18 U.S.C. § 3103a(b) and Rule 41(f)(3) because narcotics traffickers very frequently resort to violence among themselves, against suspected cooperators, and occasionally against investigating officers; and further, if narcotics suspects (certain of whom have ties with other countries) learn they are under investigation, they can easily dispose of evidence and contraband, flee, or go under cover to avoid arrest and prosecution. Certainly if GARCIA learns that geolocation information for the Target Cellphone has been provided to law enforcement authorities, he may be expected to take immediate measures to thwart the investigation.

### 4. Non-Disclosure

For the reasons discussed herein, it is necessary that the Service Provider and any Successor Service Provider and their respective agents and employees not disclose or cause the disclosure of the Order to Service Provider to any person other than those of their agents and employees who require said information to accomplish the interception ordered, and that, in particular, the Service Provider and any Successor Service Provider and their respective agents and employees shall in no event make such disclosure to the telephone user involved, or to any actual or potential interceptee.

### 5. Successor Service Provider

As discussed above, because a cellphone user can change the service provider that provides service to a particular cellphone, it is important, to avoid interruption in the execution of the Order of Interception and ancillary orders requested, that the Order to Service Provider be

immediately applicable to any Successor Service Provider without the delay attendant upon obtaining a new order of this court. To effectuate the Order of Interception and ancillary orders requested, it is also necessary for the Service Provider and any Successor Service Provider to inform the FBI immediately if the service provider changes during the course of the Interception Period, or if the telephone number for the Target Cellphone is supplied to another service provider.

**B. Order for Expedited Provision of Information Concerning Communications Devices Related to the Interception**

During the course of the interception the pen register and trap and trace devices discussed above will indicate the identifying numbers (*e.g.*, telephone numbers) of telephones and communications devices calling, or being called via, the Target Cellphone. To the extent new numbers surface during the interception it will be essential to obtain as quickly as possible subscriber and service information for those numbers to permit identification of the users of those numbers and pertinent further investigation. This type of information is available under 18 U.S.C. § 2703(d) pursuant to grand jury subpoena, administrative order, and court order or warrant. However, because some service providers do not process grand jury and administrative subpoenas as quickly as these circumstances require, a court order with a 24-hour time limit is necessary to obtain the subscriber and service information sought in the Government's Application (incorporated by reference but for the sake of brevity not repeated herein) in a timely manner. The court order herein sought, which does not specify a particular telephone number or service provider, will only be used for the duration of this interception for telephone numbers calling or being called by the Target Cellphone. Pursuant to 18 U.S.C. § 2705(b), for the same

reasons discussed above, it is requested that this order include a direction that the service provider not provide notice to the subscriber or customer as to whom information is provided (i) for six months following the date of this order, (ii) and thereafter, without ten (10) days prior notice to the Investigating Agency in case a further delay in providing notice is warranted..

## V. Sealing

It is further requested that to avoid premature disclosure of the investigation, guard against flight of suspects or the loss of evidence, and to better ensure the safety of agents and others, this Application, including the Affidavit and accompanying proposed orders, as well as any Periodic Reports, be sealed and filed with the clerk for the Eastern District of New York until ordered unsealed by the Court or by another judge of competent jurisdiction, except that copies of the Order of Interception, Order to Service Provider, and ancillary orders requested herein may be provided to the FBI and to the Government, and be served on service providers as may be necessary to effect the order's purpose.

Joseph Chimienti
Task Force Officer
Federal Bureau of Investigation

Sworn to before me this
16th day of December, 2015

THE HONORABLE MARGO K. BRODIE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF NEW YORK